### STEED et al. v. DODGEN et al.

### HEBERT et al. v. BUCKNER et al.

#### Civ. A. Nos. 365, 446.

United States District Court
W. D. Texas, Austin Division.
April 2, 1949.

D. C. Bland, Orange, Texas, for plaintiffs Tom Steel and others.

Cecil & Keith, Beaumont, Texas, for plaintiffs J. J. Hebert and others.

Price Daniel, Attorney General of Texas, and David Wuntch, Assistant Attorney General of Texas, for defendants.

Before HUTCHESON, Circuit Judge, and KENNERLY and RICE, District Judges.

RICE, District Judge.

These consolidated causes, brought by seventy-two non-residents of the State of Texas, largely residents of the State of Louisiana, seek to enjoin the enforcement of the provisions of Article 934b—1 of the Penal Code of the State of Texas, Vernon's Ann.P.C. art. 934b—1,[1] because they say

---

1. Article 934b–1 of the Texas Penal Code, under attack, has thirteen sections, summarized as follows:

Section 1, defines a Non-resident Commercial Fisherman.

Section 2, defines a Non-resident Commercial Fishing Boat.

Section 3, prescribes a license fee of $200.00 for Non-resident Commercial Fisherman.

that such legislation, as applicable to non-residents of Texas, is unconstitutional in that it violates the spirit and the letter of Article IV, Section 2[2] (being the privileges and immunities clause); the Fourteenth Amendment; and the Interstate Commerce clause, art. 1, § 8, cl. 3; all of the Constitution of the United States.

The State of Texas has been and will continue to enforce the provisions of said Act as against non-residents of said State who fail to comply with its terms.

During the trial of these causes, the Attorney General of the State of Texas admitted that Section 10 of said Act is unconstitutional, as applied to non-residents of Texas. This section levies an inspection tax or fee of $10.00 for each one hundred pounds or fraction thereof, of any cargo of shrimp sought to be discharged or unloaded from any unlicensed commercial fishing boat or vessel within the territorial limits of Texas.

By the terms of Article 934a of the Penal Code of Texas, Vernon's Ann.P.C. art. 934a, a resident commercial fisherman, for the privilege of engaging in commercial fishing within the territorial waters of the State of Texas, is required to pay an annual license fee of $3.00; and, for the same privilege, an annual license fee for a commercial fishing boat owned by a citizen of Texas is set at either $3.00 or $15.00, depending upon the length of the vessel. On the other hand, and for the same privileges, there is levied by the terms of Article 934b—1 of said Code as against a non-resident commercial fisherman an annual license tax of $200.00, and as against a non-resident commercial fishing boat an annual license tax of $2500.00.

The resident and the non-resident commercial fishermen are engaged in the same common calling, using substantially the same means and methods; and there is not shown to be any real distinction between the fishing vessels owned and used by resident commercial fishermen and those

Section 4, prescribes a license fee of $2500.00 for a Non-resident Commercial Fishing Boat.

Section 4A, further adds to the definition of a Non-resident Commercial Fishing Boat, and also sets out information the applicant is to furnish the Game, Fish and Oyster Commission in order to obtain a license.

Section 5, is the reciprocal provision giving the Game, Fish and Oyster Commission discretion in refusing or granting licenses "to the residents of any State that may now or hereafter refuse to sell or grant equal privileges or licenses to the citizens of this State."

Section 6, provides for the enforcement of this law within the tidal waters of the State of Texas extending three (3) marine leagues into the Gulf of Mexico.

Sections 7 and 8, make it unlawful for Non-resident Commercial Fishermen or Non-resident Commercial Fishing Boats to bring into Texas aquatic products for the purpose of sale, barter or exchange, without having first obtained the proper license.

Section 9, is the penalty provision of this Act.

In Section 10 there is a Legislative finding that "the taking of fish and marine life outside of the territorial waters of the State of Texas affects and endangers the supply within the State; and (that) the State of Texas has no adequate means of supervision and inspection of the sanitary conditions, and of sanitary control and inspection of the personnel of unlicensed boats or vessels operating outside of the territorial waters of this State and engaged in commercial fishing;" and sets out the procedure and requirements for the inspection tax of such cargo.

Section 10(e), sets out the venue for the prosecution of violations of the Act and sub-section f, is the severability and savings clause.

Section 11, instructs that the moneys collected because of fines, etc., shall be deposited in the State Treasury to the credit of the Game, Fish and Oyster funds.

Section 12, authorizes civil proceedings against corporation in enforcing the statute.

Section 13, is the repealing clause and also contains the severability and savings clause in the event any section or any part of the Act is found to be invalid or unconstitutional.

2. "Art. 4. Section 2. The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

owned and used by non-resident commercial fishermen.

When the Steed case was filed in June, 1947, the State of Texas, acting through its Game, Fish and Oyster Commission, had refused and thereafter continuously refused until November 15, 1948, to issue a license to a non-resident commercial fisherman or non-resident commercial fishing vessel. On said last mentioned date a resolution was adopted by said Commission authorizing the Executive Secretary to use his discretion in issuing such license.

This record discloses that the distinction between the two types of licenses required by said Act is based solely upon citizenship. This being true, the Act comes squarely within the holding of Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1157, 92 L.Ed. 1460.

The Supreme Court of the United States in the above mentioned cause held that the Act of the Legislature of South Carolina regulating commercial fishing within its territorial waters unreasonably discriminated against citizens of other States and was violative of Article IV, Section 2 of the Constitution of the United States. The facts of that case and the law under attack therein are in all respects material here substantially the same as in the causes under consideration. Because the Supreme Court, in a well reasoned opinion, has clearly expressed itself as to the constitutional question here raised, we, without further discussion, hold that the Toomer case rules these causes, and that for the reasons set forth therein Article 934b—1 is violative of Article IV, Section 2 of the Constitution of the United States.

The State of Texas contends that the enforcement of the terms of said Act should not be enjoined if the Act be held unconstitutional because, it says, each of the petitioners has a full, adequate and complete remedy at law, in that under Article 7057b of Vernon's Texas Civil Statutes each of petitioners could pay, under protest, the fees imposed by Article 934b—1 and bring suit in a proper court in Travis County, Texas, for the recovery thereof. Said Article does not provide for the payment of interest on the funds withheld, except such as may be collected by the State. There is no assurance that any interest will be collected, nor is any rate provided. To relegate these petitioners to the terms of this Article for the enforcement of their rights under an unconstitutional law would, in all probability, result in a multiplicity of suits, as well as long, vexatious and expensive delays.

In reference to said Article, in passing upon the very point raised here, Judge Critz, speaking for the Supreme Court of Texas, said in Rogers et al. v. Daniel Oil & Royalty Co., 130 Tex. 386, 110 S.W.2d 891, 896:

"If equity jurisdiction can interfere to prevent a multiplicity of suits, the condition of this record presents such facts or conditions as to call for the exercise thereof. It would be a paradox to say that equity jurisdiction can be exercised to prevent a multiplicity of suits and at the same time say that a legal remedy is complete and adequate, although it leads to such multiplicity. To our minds, if a remedy at law, though otherwise complete and adequate, leads to a multiplicity of suits, that very fact prevents it from being complete and adequate."

Generally speaking, it is the duty of a Federal Court to withhold a decision on the merits of a State Statute and retain a bill until the State Courts have construed the State law. American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873. But this is not such a case. The Supreme Court of the United States has spoken, and its decision in respect to the matters here involved would control the decisions of the Courts of Texas.

Plaintiffs are entitled to the injunctive relief they pray for and an appropriate decree will be entered.