## GOSPODONOVICH et al. v. CLEMENTS.

### Civ. A. No. 3055.

United States District Court
E. D. Louisiana, New Orleans Division.

Aug. 29, 1951.

Appeal Dismissed Jan. 5, 1953.

See 73 S.Ct. 332.

Hirsch, Greene & Barker, New Orleans, La., for plaintiff.

Albert S. Cain, New Orleans, La., for defendant.

Before BORAH, Circuit Judge, CHRISTENBERRY, Chief Judge, and THOMAS, District Judge.

CHRISTENBERRY, Chief Judge.

This is a suit brought by fourteen commercial fishermen, eight of whom are residents of the State of Mississippi and six of

whom are residents of the State of Alabama, against the Commissioner of the Department of Wildlife and Fisheries of the State of Louisiana, to enjoin the enforcement of those provisions of Title 56, Sections 377, 500, 551, 552 and 554 of the Louisiana Statutes Annotated—Revised Statutes of 1950, of the State of Louisiana, regulating and governing nonresident commercial fishermen and commercial fishing vessels, on the ground that such provisions are unconstitutional in that they contravene Article IV, Section 2, the Privileges and Immunities Clause; Article 1, Section 8, the Commerce Clause; and the Fourteenth Amendment, of the Constitution of the United States.

Petitioners are engaged in the taking and catching of fish, shrimp and oysters, which is a common calling of citizens of the states bordering on the Gulf of Mexico.

Respondent has been enforcing and will continue to enforce as against plaintiffs and other nonresidents, the provisions of the state statutes here complained of, which provide for forfeiture of boats and other equipment and for punitive sanctions in the way of fines and imprisonment.

The Legislature of Louisiana has classified the waters of Louisiana as follows:

Title 56, § 355, LSA–R.S. "* *, the waters of the state are divided into two classes: inland waters and coastal waters. The inland waters include all waters in which there is no regular ebb and flow of the tide. The coastal waters include all waters within which the tide regularly ebbs and flows."

Coastal waters are defined in Title 56, § 495, as follows:

"* * *, coastal waters of the state are divided into two classes, inside waters and outside waters. The outside waters shall include that portion of the Gulf of Mexico within the boundaries of the state and that portion of the Gulf of Mexico east of the

Mississippi River, to Southwest Pass, and between the 'cut-off' at Rabbit Island, or the boundary between St. Mary and Iberia Parishes to the Sabine River, west of the Mississippi River, of which the water is three fathoms or more in depth. All other waters of the state within which the tide regularly rises and falls or into which salt water shrimp migrate are inside waters."

The statutes assailed contain no territorial restriction as to the waters in which they will be enforced, and the record discloses that respondent has enforced and will continue to enforce these statutes up to 27 miles off shore from the Louisiana Coast.[1]

The provisions of the statutes relating to the license fees charged commercial fishing boats, Title 56, § 376, LSA–R.S.1950, provide for payment by citizens of the State of Louisiana of a license fee of 5 per annum for boats of 45 feet or under in length, and $10 per annum for boats over 45 feet in length. Title 56, § 377 provides that no vessel shall be licensed or permitted to engage in commercial fishing or freighting operations for fish unless the vessel shall have been registered at a customs port within the State of Louisiana, and unless the owner of such vessel is a bona fide citizen of the State of Louisiana, resident therein for two years.

With respect to boats engaged in the commercial taking or freighting of oysters, Title 56, § 431, LSA–R.S. of 1950, provides that licenses for such boats shall be issued only upon the application of any resident of the state, and the license tax is fixed at 50 cents per ton, or fraction thereof, per year.

As to commercial fishing boat licenses to catch and transport shrimp, Title 56, § 500, LSA–R.S. of 1950, provides that no vessel may be licensed or permitted to engage in commercial shrimp fishing or freighting unless registered at a customs port within the state, and unless the owner is a resident. An exception is made with respect to ves-

1. "Gulfward Boundary. LSA–R.S. 49:1: "The gulfward boundary of the state is a line located in the Gulf of Mexico parallel to the three-mile limit as determined according to international law, and is located twenty-four marine miles further out in the Gulf then the three-mile limit."

sels owned and operated by citizens of a state which has entered into a reciprocal agreement with Louisiana. Citizens of such reciprocating states and boats owned by such citizens may catch or transport shrimp upon payment of the same licenses and taxes as are levied upon citizens of Louisiana, and boats owned by them, but only in certain described waters.[2]

No commercial fishing vessels owned by nonresidents of Louisiana, whether the owners of such vessels be residents of states with which Louisiana has reciprocal agreements or not, are permitted to fish for fish, shrimp or oysters in the area lying approximately west of the mouth of the Mississippi River.

It will be noted that the foregoing statutes do not provide for the licensing of commercial fishing boats owned and operated by nonresidents, with the exception of those vessels owned and operated by bona fide residents of states with which the State of Louisiana has a reciprocal agreement. True, Act 210 of the Legislature of 1946, LSA–R.S. 56:551 et seq., provides for the issuance of a nonresident commercial fishing boat license upon payment of a fee of $2,500. However, the record discloses that no such license has ever been issued by respondent, and respondent is not now prepared to issue and has no intention of issuing a $2,500 license. The explanation is that he considers Act 210 of 1946 to be ineffective, for the reason that the Act contains a proviso that it be considered as supplemental legislation, and not be construed as repealing any of the provisions of any other bill or act passed by the Legislature at the same session involving the same or similar subject-matter. Section 14. In amplification thereof respondent asserts

that at the same session of the Legislature Act 78, LSA–R.S. 56:493 et seq., dealing with the same subject-matter, was adopted; that Act 78 made no provision for the issuance of a $2,500 license; and that since Act 210 is not to be construed as repealing in any manner Act 78, such provision in Act 210 is without effect. In this connection, it is interesting to note, however, that this section of Act 210 of 1946 has been carried over into LSA–R.S. Title 56, and is Section 552 of that Title. Be that as it may, the fact remains that no commercial fishing boat licenses have been or will be issued to boats owned by nonresidents except those owned by such nonresidents as are residents of states with which the State of Louisiana has reciprocal agreements.

We turn now to the question of commercial fishermen's licenses. By the terms of Title 56, § 500, LSA–R.S.1950, to fish for shrimp citizens of Louisiana are required to pay a license fee of from $10 to $25 on each shrimp seine or net, depending upon its length, and $10 on each trawl used. A nonresident is required to pay a fee of $200 for a nonresident commercial fishermen's license, which entitles him to shrimp only in the so-called unrestricted tidal salt waters of the State. With respect to oyster fishing and transportation, citizens of Louisiana pay no license fee, Title 56, § 422, LSA–R.S. of 1950, while nonresidents are required by the terms of Title 56, § 551, LSA–R.S. of 1950, to pay a fee of $200, which permits them to take or transport oysters only in unrestricted waters.

The evidence discloses that the resident and the nonresident commercial fishermen use substantially the same means and methods. The evidence further discloses that there is no real distinction between

2. Title 56, § 500. " * * * those waters of Louisiana lying east of a line extending south from the mouth of East Pearl River and bounded on the south by the north shore of Bayou LaLoutre and Point Chicot; and east of a line described as running from Point Chicot in a southwesterly direction to Battledore Reef, as shown on United States Coast and Geodetic Survey Chart No. 1272; thence southeasterly to a point three miles off-shore from the mouth of Main Pass of Cubit's Gap; thence southeasterly to a point three miles off-shore from the mouth of North Pass of Pass-A-Loutre; then southerly to a point three miles off-shore from the mouth of Northeast Pass; thence southerly to a point three miles off-shore from the mouth of Southeast Pass; thence southwesterly to a point three miles southeast from the mouth of South Pass; thence south to the outer boundary of Louisiana."

the fishing vessels owned and operated by resident commercial fishermen and those operated by nonresident commercial fishermen. There is nothing in the record to support a conclusion that the cost of enforcing the laws against nonresidents is greater.

It is clear that the distinction between the two types of licenses required by the statutes, for both commercial fishing boats and commercial fishermen, is based solely upon citizenship. It is of no moment whether Section 552 which provides for the payment of a $2,500 fee for a nonresident commercial fishing boat license is effective or not. As has been stated, respondent has not issued and will not issue such licenses, but if he did, such license would unreasonably discriminate against nonresident commercial fishermen.

These are not conservation measures, they are intended to exclude nonresidents from pursuing a common calling of citizens of states bordering on the Gulf of Mexico. The waters which are closed to nonresident commercial fishermen are open to commercial fishermen who are citizens of Louisiana. The statutes place no limitation upon the number of commercial fishing vessels which may be licensed, nor upon the number of fishermen. The Chief Biologist of the Department of Wildlife and Fisheries of the State of Louisiana testified that the supply of shrimp bears no relationship to the number of vessels harvesting the crop, providing the fishing methods used are properly supervised.

In the case of Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460, the Supreme Court held that commercial shrimping in the marginal sea, like other commercial callings, is within the purview of the Privileges and Immunities Clause, and on that basis held unconstitutional certain statutes of the State of South Carolina which discriminated against citizens of other states. The statutes there involved were characterized as so "drastic as to be a near equivalent of total exclusion." We think that the Statutes complained of come clearly within the holding of Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 1157, 1163. See also, Steed v. Dodgen, 85 F.

Supp. 956, and Dobard v. State, 149 Tex. 332, 233 S.W.2d 435, 439.

We hold that Title 56, Sections 377, 500, 551, 552 and 554 of the LSA–Revised Statutes of 1950 of the State of Louisiana, insofar as they undertake to regulate and govern nonresident fishermen and fishing vessels owned by nonresidents, are violative of Article IV, Section 2 of the Constitution of the United States. Plaintiffs are entitled to have the injunctive relief prayed for by them, and an appropriate decree will be entered.