**EDWARDS et al. v. LEAVER, Director of Agriculture and Conservation of Rhode Island et al.**

Civ. A. No. 1277.

United States District Court
D. Rhode Island.

Jan. 30, 1952.

Gerald W. Harrington, Providence, R. I., with whom Charles W. Bartlett, Boston, Mass., was on brief, for plaintiffs.

Robert A. Coogan, Asst. Atty. Gen. of Rhode Island, with whom William E. Powers, Atty. Gen. of Rhode Island, was on brief, for defendants.

Before HARTIGAN, Circuit Judge, and McCARTHY and LEAHY, District Judges.

HARTIGAN, Circuit Judge.

This is a civil action brought by three individuals, Norman C. Edwards, H. Kenneth Payne and Kenneth S. Edwards, who are citizens of the United States and of the State of New York, a New York corporation (The Smith Meal Company of New York) and a Massachusetts corporation (Smith Meal Company of Massachusetts), against Francis S. Leaver, Director of Agriculture and Conservation of the State of Rhode Island, and Edward C. Hayes, Jr., Administrator of Fish and Game of Rhode Island, to enjoin the enforcement of a certain menhaden fishing statute of the State upon the ground that it violates several provisions of the Constitution of the United States.

Jurisdiction is alleged to be based upon diversity of citizenship and a federal ques-

tion under the provisions of Title 28, U.S.C. §§ 1331 and 1332.

This special district court was duly constituted in conformity with Title 28, U.S.C. § 2284.

The complaint as amended charges, among other things, that the statute, Chapter 2120,[1] Public Laws of Rhode Island, 1948, and the threatened enforcement thereof by the defendants, violate the rights of the plaintiffs under the Constitution of the United States and the Amendments thereto in the following particulars:

"(a) They deprive both the individual and corporate Plaintiffs of the equal protection of the laws, in violation of the provisions of Article XIV, Section 1, of the Amendments to the Constitution of the United States;

"(b) They deprive both the individual and corporate Plaintiffs of liberty or property without due process of law, in violation of the provisions of Article XIV, Section 1, of the Amendments to the Constitution of the United States;

"(c) They abridge the privileges or immunities of the individual Plaintiffs, who are citizens of the United States, in violation of Article XIV, Section 1, of the Amendments to the Constitution of the United States;

"(d) They deprive the individual Plaintiffs, citizens of the State of New York, of privileges and immunities of citizens in the several states, in violation of Article IV, Section 2, of the Constitution of the United States;

"(e) That said statute imposes an unreasonable burden upon interstate commerce and violates the so-called Commerce Clause of Article I, Section 8, of the Constitution of the United States."

The complaint concludes with a demand for judgment and prays that the defendants be restrained and enjoined from enforcing the statute and that this court enter a declaratory judgment in accordance with the provisions of Title 28, U.S.C. §§ 2201, 2202, declaring the statute null and void and of no effect, as being in contravention of the Constitution of the United States and Amendments thereto. The plaintiffs also prayed for an interlocutory injunction, for a restraining order and for the convening of a three-judge court to hear the matter.

1. "An Act Regulating the Taking of Fish Known as Menhaden From the Public Waters of This State.

"*It is enacted by the General Assembly as follows:*

"Section 1. It shall be unlawful for any person, partnership, firm, association, or corporation to catch or take, or to attempt to catch or take, with purse net or seine any fish commonly known as menhaden from the public waters of this state north of a line commencing at Point Judith Light and running approximately in a northeasterly direction to Brenton Reef Lightship, thence continuing to Sakonnet Light; provided, that any legal resident of the state, or any partnership, firm, or association composed entirely of legal residents of this state, or any Rhode Island corporation 51% of whose stock is owned by legal residents of this state, may, upon application to the administrator of fish and game, annually obtain a license to take menhaden from the waters of this state from July 1 to October 31 north of the line described; provided, however, that any equipment used by any licensee for the catching of menhaden shall be registered with said administra-

tor in accordance with such regulations as he may promulgate; and provided, further, that 51% of the crew manning the boats used by any licensee for the catching of menhaden, shall be legal residents of this state. Said administrator shall determine the eligibility of any person, partnership, firm, association, or corporation to take menhaden from the waters of this state under this act.

"Sec. 2. Any license issued under the foregoing section shall not be transferable. If the administrator of fish and game shall determine that any licensee has obtained his or its license by fraud or deception, or has violated the provisions of section one of this act, said administrator shall revoke his or its license.

"Sec. 3. Any person, partnership, firm, association, or corporation violating the provisions of section one of this act, upon conviction thereof, shall be fined not less than $500.00 nor more than $750.00.

"Sec. 4. This act shall take effect upon its passage and all acts and parts of acts inconsistent herewith are hereby repealed."

A temporary restraining order was entered on July 25, 1951, and it was stipulated by the parties that it should remain in full force and effect until final hearing of the matter.

The parties entered into the following stipulation:

"1. That defendant Francis S. Leaver is Director of Agriculture and Conservation of the State of Rhode Island and is a citizen of said State.

"2. That defendant Edward C. Hayes, Jr., is Administrator of Fish and Game of said State of Rhode Island, and is also a citizen of said State and is a subordinate official under the direction of Francis S. Leaver, said Director of Agriculture and Conservation as aforesaid.

"3. That the defendants are charged with the enforcement of Rhode Island laws concerning fish and the control of rights to fish.

"4. That without defendants' admitting the existence of such a right on the part of the plaintiffs, the right to fish in Rhode Island waters within and north of the line prescribed in Rhode Island Public Laws of 1948, Chapter 2120, is a right of great value. Said plaintiffs are being prevented from fishing in said waters by reason of the provisions of Rhode Island Public Laws of 1948, Chapter 2120, and by the threatened and intended action of the defendants in enforcing the provisions of said statute.

"5. That the defendant, Edward C. Hayes, Jr., is in direct charge of the operations of the personnel of the state enforcement boats.

"6. That both defendants have threatened to enforce the provisions of Rhode Island Public Laws of 1948, Chapter 2120, and to arrest the captain and crews of all vessels found fishing in violation of the terms of purported statutes within the waters north of the line defined therein.

"7. That the individual plaintiffs prior to the existence of the said statute, namely, Rhode Island Public Laws of 1948, Chapter 2120, and the defendants' threats to enforce it, were permitted to fish for Menhaden in the waters north of and within the line defined in said statute.

"8. That the defendants, acting pursuant to said statute, which plaintiffs claim is unconstitutional and which defendants claim is lawful, have issued licenses to two individual Rhode Island residents to fish for Menhaden within and north of the line defined in said Public Laws of 1948, Chapter 2120. The names and addresses of these individuals are as follows:

"Clarence Winstead, Warwick, Rhode Island,

"Harold Loftes, Wakefield, Rhode Island.

"9. That said licensees have, in fact, fished for and caught Menhaden during the summer of 1951 within and north of the line defined in said statute; that said Menhaden have been sold on their behalf to a fish processing plant located within the State of Rhode Island at Galilee and operated by a Rhode Island corporation, Point Judith Dehydrating Process Co.

"10. That from said Menhaden so caught, said corporation has produced Menhaden oil and fish meal, both of which have been shipped to purchasers outside of the State of Rhode Island.

"11. That none of the plaintiffs have applied to either of the defendants for a license to catch Menhaden north of and within the line defined in said statute.

"12. That had any of the plaintiffs so applied for such a license or licenses, their applications would have been denied, although the plaintiffs were at all times ready, willing and able to pay the fees required by said statute.

"13. That the plaintiffs and each of them, in the event that said statute is enforced, will suffer irreparable injury which is clear and imminent by reason of the fact that the loss of a season's fishing cannot be restored, and the State of Rhode Island provides no means for recovering damages in money to compensate for such loss.

"14. That Menhaden are used for the manufacture of Menhaden oil and fish meal and that said Menhaden are not food fit for human consumption.

"15. That the plaintiffs were ineligible to apply for a license under the terms of

said Rhode Island Public Laws of 1948, Chapter 2120, for the following reasons:

"(a) Because the individual plaintiffs were residents and citizens of the State of New York;

"(b) Because the corporate plaintiffs were both organized under the laws of States other than the State of Rhode Island;

"(c) Because more than 51% of the members of the crews of the boats owned by the corporate plaintiff, Smith Meal Company of Massachusetts, are residents of States other than the State of Rhode Island."

The Smith Meal Company of New York processes menhaden at its Long Island, N. Y., plant and is in competition with other such firms, many of which are in other states. It buys menhaden from the individual plaintiffs who operate fishing vessels and it manufactures fish meal, oil and solubles therefrom which are shipped to various states. The Smith Meal Company of Massachusetts owns fishing vessels which it charters to the individual plaintiffs here, who are boat captains.

The captains reap a reward in proportion to the fish they catch and the right to fish for menhaden is valuable to them and to both corporations. More than 51% of the vessels' crews come from outside Rhode Island and they are on a share basis. It appears that more than $3,000, exclusive of interests and costs, is involved. The president of the New York corporation testified that he knew of no federal regulations relating to menhaden and none has been called to our attention.

The Massachusetts corporation is a wholly owned subsidiary of the New York corporation. The captains decide where to fish and the fishing season is roughly from June 15 to September 15.

The menhaden swim north along the Atlantic coast in the spring and school in Narragansett Bay about the first part of June. The vessels follow the menhaden and the fish are caught in purse nets. The vessels have operated in Narragansett Bay in the State of Rhode Island and have done so for years on a profitable basis.

H. Kenneth Payne testified that the Rhode Island statute has prevented him from obtaining large catches and that he has not fished in Rhode Island waters since the 1948 statute because he did not have a license. He catches menhaden by use of a purse net since it is not practical to catch them with a hand line. According to his testimony the amount of game fish caught is small but occasionally he catches a bucket of blue fish in his menhaden nets during a day of fishing. It was his experience that menhaden and other fish usually do not mix together in any quantity.

Samuel S. Edwards, the father of Norman and Kenneth, testified as to his experience with menhaden. His experience was similar to Payne's as to the habits of menhaden and as to the value of the right to fish in Rhode Island waters. In a normal season he would expect to catch enough menhaden for which he would get more than $3,000.

It was stipulated that the menhaden caught was within two marine leagues of the Rhode Island mean low water mark.

Kenneth S. Edwards testified as to the value of the menhaden fishing in Rhode Island. He presented a record of his catch during the 1951 season in Narragansett Bay following the issuance of the court's restraining order which held the operation of this statute in abeyance. The catch was substantial and appeared to be a profitable operation which netted more than $3,000. He also stated he caught very few game fish in his net, hardly enough blue fish to feed the crew. Fishing with purse nets is the only economic way to catch menhaden, according to his testimony.

The state's expert witness, a marine biologist, agreed generally with the captains' observations as to the habits of menhaden.

Edward C. Hayes, Jr., testified that two licenses had been issued under the statute to Loftes and Winstead. He explained that sports fishermen had urged the passage of the legislation involved here because nonresidents in previous years were the only ones exploiting menhaden fishing. He admitted on cross examination that he never

saw bass caught in a menhaden purse seine. He also stated that there was "no provision for licensing boats of this nature before 1948."

In the oral argument before us the defendants raised no issue as to the jurisdiction of this court relative to the amount in controversy or as to the lack of a federal question. It is clear from the evidence that the requisite jurisdictional amount is involved, that diversity of citizenship exists and that a substantial federal question is presented. See Russo v. Reed, D.C., 93 F.Supp. 554.

The defendants' main contention is that the statute is constitutional in that it is a proper regulation of Rhode Island inland fisheries.

The facts do not support this contention. The case of Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460, disposes of this as well as most of the defendants' contentions. See also the Russo case, supra.

It was stated in the Toomer case, 334 U.S. at page 393, 68 S.Ct. at page 1161, that South Carolina had "sufficient interests in the shrimp fishery within three miles of its coast so that it may exercise its police power to protect and regulate that fishery." The court continued, 334 U.S. at page 394, 68 S.Ct. at page 1161: "It does not follow from the existence of power to regulate, however, that such power need not be exercised within the confines of generally applicable Constitutional limitations. In the view we take, the heart of this case is whether South Carolina's admitted power has been so exercised." This statement is pertinent to the problem here. The interest of Rhode Island in protecting its fisheries is not disputed nor is the existence of its power to regulate them denied. However, we are concerned here with the manner in which this power is exercised and the question is, in view of the facts here, whether or not the statute violates the rights of these plaintiffs under the Constitution of the United States.

In our judgment their rights are violated. That a discrimination is being made against non-residents is clear from a mere reading of the statute. The magnitude of the discrimination is disclosed by the evidence. It virtually excludes all non-residents from catching or taking with purse net or seine menhaden by denying to them licenses by which they might lawfully engage in such fishing and subjects them to heavy penalties for failure to procure such licenses. No such prohibition exists as to residents of this State. This disparity of treatment between residents and non-residents requires an adequate explanation if the statute is to be sustained as a proper exercise of the state's police power.

The privileges and immunities clause of Art. IV, § 2, of the Constitution and the equal protection clause of the Fourteenth Amendment, set forth in the footnote,[2] are the chief bases for the plaintiffs' case. They help to mark some of the "confines of generally applicable Constitutional limitations" within which this acknowledged power of the state must be exercised. As the court stated in the Toomer case, 334 U.S. at page 396, 68 S.Ct. at page 1162: " * * * it was long ago decided that one of the privileges which the clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State."

A careful consideration of the evidence and of the defendants' contentions fail to disclose any adequate explanation for the discrimination against non-residents inherent in this statute and for the threatened

2. "Article IV. * * * Section 2. The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.
    *    *    *    *    *    *
    "Article XIV. Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

discriminatory enforcement of its provisions by these defendants. There is no substantial equality of treatment as between residents and non-residents.

It has not been shown that any local evils, caused by non-residents, would be eliminated by this statute. It is admitted that menhaden "are not food fit for human consumption." The argument based on preserving the food supply for citizens of the state does not confront us here and, therefore, the cases supporting such are not pertinent.

A statement does appear in the record that the statute was enacted at the behest of game fishermen and the inference is that the purse nets used in menhaden fishing also catch game fish, thus reducing the number of game fish. However, the undisputed testimony refutes this suggestion. This testimony is that menhaden and other fish do not generally mix, so that the catching of such other fish in any large amount in a menhaden purse net is quite unlikely. Also, the experience of the witnesses was that when some game fish were caught in menhaden nets the amount was negligible so that this argument is not persuasive. Furthermore, it is a fact that two Rhode Islanders were licensed to catch menhaden and it does not appear that there is any restriction upon the number of licenses that may be issued to legal residents of Rhode Island. This rebuts any inference or suggestion that the statute is designed to preserve game fish. There is of course no argument, and we find no reason to believe, that the statute seeks or that the state desires to conserve menhaden which are generally regarded as "trash fish".

To paraphrase the language of the Supreme Court in the Toomer case, 334 U.S. at page 399, 68 S.Ct. at page 1164: The statute must be held unconstitutional unless menhaden fishing in the designated area "falls within some unexpressed exception to the privileges and immunities clause." We conclude that the statute does not meet this test.

Menhaden are free-swimming fish and as was pointed out in the Toomer opinion, the case of McCready v. State of Virginia, 94 U.S. 391, 24 L.Ed. 248, is clearly distinguishable on that fact.

In view of the discriminatory character of this statute, we do not regard as important the fact that the area designated by the statute may be regarded as inland waters. The important fact is that menhaden are migratory fish. We hold, in accordance with the ruling of the Toomer case, that menhaden fishing in the designated area is within the purview of the privileges and immunities clause.

■ It is of course clear that the corporations here are not citizens within the meaning of the privileges and immunities clause. However, they are persons within the meaning of the equal protection and due process of law clauses. See Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660; Providence Journal Co. v. McCoy, D.C., 94 F.Supp. 186, affirmed, 1 Cir., 190 F.2d 760, certiorari denied 342 U.S. 894, 72 S.Ct. 200. The corporate plaintiffs, therefore, are entitled under the equal protection clause to relief against the discrimination sanctioned by this statute.

Our conclusions as set forth above will afford the plaintiffs sufficient basis for the relief they seek. We find it unnecessary to consider their contentions in regard to the Civil Rights Act and the Commerce Clause. There is no necessity for a declaratory judgment in the circumstances here in view of our disposition of the issues and inasmuch as we regard the relief granted herein as adequate. Cf. Alabama State Federation of Labor, Local Union No. 103 v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725.

It is hereby ordered, adjudged and decreed that the defendants Francis S. Leaver, Director of Agriculture and Conservation of the State of Rhode Island, and Edward C. Hayes, Jr., Administrator of Fish and Game of the State of Rhode Island, their officers, agents and servants and their successors, be, and the same hereby are, permanently enjoined and restrained from enforcing the provisions of Chapter 2120 of the Public Laws of Rhode Island, 1948, as to these plaintiffs.