Francis A. MISKELL, Regulatory Loan Commissioner of Texas, Appellant,

v.

TERMPLAN INCORPORATED OF HOUSTON, Termplan Incorporated of El Paso, Termplan Incorporated of Oak Cliff, Termplan Incorporated of South Texas, Termplan Incorporated of Fort Worth.

Francis A. MISKELL, Regulatory Loan Commissioner of Texas

v.

TEXAS PUBLIC FINANCE CORPORATION.

Francis A. MISKELL, Regulatory Loan Commissioner of the State of Texas,

v.

BENEFICIAL FINANCE COMPANY OF HARRIS COUNTY.

Francis A. MISKELL, Regulatory Loan Commissioner of the State of Texas,

v.

CONSOLIDATED CREDIT CORPORATION OF ARLINGTON et al.

Nos. 11220–11224.

No. 11230–11232.

Court of Civil Appeals of Texas.

Austin.

July 8, 1964.

Rehearing Denied July 22, 1964.

Waggoner Carr, Atty. Gen., Charles B. Swanner, Howard M. Fender, Asst. Attys. Gen., Austin, for appellant.

Irby & McConnico, Fort Worth, for Termplan Incorporated of Houston.

R. Dean Moorhead, Austin, C. S. Baumgarten, St. Louis, Mo., Irion, Cain, Cocke & Magee, Dallas, for Texas Public Finance Corp.

Clark, West, Keller & Clark, Allen Butler, Dallas, for Beneficial Finance Co. of Harris County.

Graves, Dougherty, Gee & Hearon, Austin, Berry & Browne, Charlotte, N. C., for Consolidated Credit Corp. of Arlington.

PHILLIPS, Justice.

Inasmuch as the factual situations and the issues involved in all of the above styled cases are interrelated and dependent upon the constitutionality of a portion of the same section of the same statute, hereinafter described, the cases were consolidated for trial in the court below, were consolidated for argument before this Court, and will be considered together in this opinion.

This is an appeal by Francis A. Miskell, Regulatory Loan Commissioner of Texas, hereinafter referred to as appellant, from a judgment of the trial court setting aside his order denying regulatory loan licenses to the various loan companies set out above. The loan companies will hereinafter be referred to as appellees.

The licenses in question were applied for by appellees by authority of the Texas Regulatory Loan Act of 1963 which is now designated as Art. 6165b, Vernon's Civil Statutes.

This act was passed by the 58th Legislature May 23, 1963, and became effective August 23, 1963. The purpose of the act was to regulate the small loan industry in Texas. Appellees do not contest the authority of the State to regulate the industry, however, they do attack the constitutionality of Section 7(d) of the act [1] which requires that at least 51% of the capital stock of the corporations subject thereto be owned by citizens of the State of Texas.

1. "(d) No person who is not a citizen of the State of Texas shall be eligible to receive a license under this Act. No license shall be issued to a corporation unless the same be incorporated under the laws of this state, and at least fifty-one per

The act provides further that a corporate applicant which does not meet such requirement be granted a license only for such place or places of business as it was operating on January 8, 1963.

The trial court held that the above mentioned provisions of Section 7(d) are unconstitutional and invalid and in violation of Section 3, Article 1, and Section 19, Article 1 of the Constitution of Texas, Vernon's Ann.St., and the Equal Protection and Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

We affirm the judgment of the trial court.

█ The trial court held, and we so hold, that by virtue of the severability clause in Section 31 of the Act, the provisions of the Act are severable and any unconstitutional portions of Section 7(d) can be held for naught without disturbing the remainder of the act.

None of the appellees' capital stock is held by 51% or more by citizens of the State of Texas, however, appellees find themselves in slightly differing factual situations.

Beneficial Finance Company of Harris County, a Texas corporation can generally be classified as a new company desiring to do business since the passage of the Act. Beneficial is a wholly owned subsidiary of Beneficial Finance Company, a Delaware corporation, the stock of which is listed on the New York stock exchange. Beneficial was not doing business in the State prior to January 8, 1963.

Consolidated Credit Corporation of Arlington, Texarkana and Waco are three domestic corporations wholly owned by Consolidated Credit Corporation, a North Carolina corporation. These corporations were chartered after January 8, 1963, began business and had loans outstanding before the passage of the act.

Termplan Incorporated of Houston, El Paso, Oak Cliff, South Texas and Fort Worth are five domestic corporations whose stock is totally owned by Industrial Finance and Thrift Corporation, a Louisiana corporation. Each of these corporations (except Termplan Incorporated of Oak Cliff which began doing business June 24, 1963) were incorporated after January 8, 1963, but prior to the passage of the act and prior to the effective date of the act.

Texas Public Finance Corporation, a domestic corporation, has its entire stock owned by American Investment Company, a Delaware corporation with principal offices in St. Louis, Missouri. This corporation for a lengthy period both prior and subsequent to January 8, 1963, engaged in business in El Paso, Texas, and now desires to open a branch office in Dallas.

Under the provisions of the act stated above and under the rulings of the Loan Commissioner none of the above mentioned appellees can legally operate in Texas with the exception of Texas Public Finance Cor-

cent (51%) of the stock of the corporation is owned at all times by citizens of the State of Texas and who possess the qualifications required of other applicants for license; provided, however, the restrictions contained in the preceding clause shall not apply to domestic or foreign corporations which are doing business in this state under charter or license prior to January 8, 1963, but any such corporation which does not meet the requirements of such restrictions shall not be issued a license for any place of business other than those being operated by it on January 8, 1963. Partnerships, firms, and associations applying for li-

censes shall be composed wholly of citizens possessing the qualifications above enumerated. Any person holding a license under this Act who shall violate any provision hereof, or any rule or regulation promulgated hereunder, shall be subject to forfeiture of its license and if a corporation, its charter shall be subjected to forfeiture, and it shall be the duty of the Attorney General, when any such violation is called to his attention, to file suit for such forfeiture of charter and cancellation of the license in a District Court in Travis County, Texas."

poration which is limited to the operation of its office in El Paso.

All of the appellees have made application to the Loan Commissioner for licenses to do business as required by the act and all have been reported by the Commissioner to have complied with the act in every respect, are qualified and entitled to licenses to operate under the act with the exception of the stock ownership provision.

It is undisputed that other qualified domestic corporations have been granted licenses because they were doing business in this State under charter or license prior to January 8, 1963, although 51% of their stock is not owned by residents of Texas.

As stated above, each appellee is a corporation organized under the laws of the State of Texas and has its principal office and place of business in the State of Texas.

Under Section 10(c) of the act a qualified person or corporation is entitled to a maximum of 60 licenses to operate 60 separate offices.

We hold that Section 7(d) discriminates between two domestic corporations on the basis of the residence of their shareholders and the length of time each has been engaged in business. That the apparent discrimination is invidious to the due process and equal protection clauses of the Constitutions of Texas and of the United States.

In Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957) the Supreme Court of the United States held that a statutory discrimination must be based on differences that are reasonably related to the purposes of the act in which it is found.

We have reviewed the entire record and are unable to find any differences that would uphold statutory discrimination between Texas corporations whose Texas citizens own 51% or more of the stock and Texas corporations whose stock is not so held.

Section 1 of the act entitled Declaration of Legislative Intent [2] does not provide any clue for such a discrimination. From a history of the small loan business in Texas compiled by the Legislative Council with an eye toward the regulatory legislation that was subsequently passed, we find that the principal evils were overcharges on loans-usury; "flipping" (renewal) and pyramiding loans; and harassment of borrowers in connection with delinquent loans.[3] More-

2. "Section 1. The Legislature finds as facts and determines:

"(a) The Legislature should, in obedience to Article XVI, Section 11, of the Constitution of Texas, as amended in 1960, classify loans and lenders, license and regulate lenders, define interest and fix a maximum rate of interest pertaining to licensees under this Act.

"(b) Consumer loans make an essential and useful contribution to our society in that they provide the only means by which many individuals and families can secure credit to improve their standards of living and to meet unforeseen financial emergencies.

"(c) There exists among citizens of this state a widespread demand for such loans, the scope and intensity of which has been increased progressively by many social and economic forces.

"(d) Due to the lack of adequate regulation, many unethical and unscrupulous lenders are engaged in the making of loans of this type and are subjecting borrowers to abuses.

"(e) These facts characterize and distinguish loans with cash advances of One Thousand Five Hundred Dollars ($1,500) or less, and legislation to control this class of loans is necessary to protect the public welfare.

"(f) It is the intent of the Legislature in enacting this statute to bring under public supervision those engaged in the business of making such loans, to eliminate practices that facilitate abuse of borrowers; to establish a system of regulation for the purpose of insuring honest and efficient loan service and of stimulating competition in such lending; to provide for interest that is fair, just and equitable, and to provide the administrative machinery necessary for effective enforcement."

3. Report of the Texas Legislative Council to the 57th Legislature entitled "The Small Loan Business in Texas through 1961," Part L.

over, it was stipulated between the parties that at least 90% of the usury suits which the Attorney General instituted in a given year against loan companies were instituted against Texas-owned businesses, rather than against loan companies such as appellees.

The Attorney General in representing appellant seeks to justify the discrimination by citing cases which sustain certain discriminations in the regulation of the liquor industry. His principal cases here are DeGrazier. v. Stephens, 101 Tex. 194, 105 S.W. 992, 16 L.R.A.,N.S., 1033, where reasonable residence requirements were upheld to insure that nonresidents and others not amenable to process by the State do not use their immunity to evade the regulatory laws of the State; Texas Liquor Control Board v. Continental Distilling Sales Co., 203 S.W.2d 288, Tex.Civ.App., er.ref., upheld Article 666–15½ of the Penal Code, which prohibited a person holding a nonresident seller's permit from holding or having an interest in the permit or business of a person authorized to import liquor into the State for resale. In upholding the statute, the court emphasized that the 21st amendment to the Constitution of the United States gave the State broad powers to control the transportation of liquor into and within the state. The discrimination cases in the liquor field are of little help as they are treated in a class to themselves. This is especially so since the adoption of the 21st amendment to the Federal Constitution.

The Attorney General also cites Commercial Insurance Companies of Newark, N. J. v. Adams, Tex.Civ.App., 366 S.W.2d 801, by the Houston Court of Civil Appeals in which error was refused. This case upheld the constitutionality of Section 27 of Article 1995 which allowed a wider venue for actions against foreign corporations than was provided for in Section 23 of the same statute. The court viewed Section 27 as tending to place foreign corporations on a parity with domestic corpora-

tions with respect to venue and stated: "There is little doubt that the difficulty of securing service on foreign corporations was a factor inducing the Legislature to provide a wide venue for actions against them."

Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959) cited by the Attorney General, does not permit a State to discriminate against a nonresident but in fact upheld a State law which exempted from personal property taxes merchandise belonging to nonresidents of the State if held in a warehouse for storage only. The discrimination here was not against nonresidents but against residents, a factor which a majority of the court deemed decisive.

Nor do we believe that Metropolitan Casualty Insurance Company of New York v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 (1934) is in point here as this case upheld a State law permitting domestic insurance companies to operate under a statute of limitations lesser in duration of time than foreign insurance companies. The difference in treatment was held to be reasonable because of the difficulties often arising in settling claims with insurance companies whose business offices might be located outside of the State.

The Attorney General's argument that the Legislature had the power to insert the offensive provisions of the act quoted above because engaging in the small loan business in Texas is not a "right" but a mere "privilege" is foreclosed by Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796. In Schware the court held that a State cannot, by referring to the practice of the law as a privilege rather than a right, prevent a person from practicing for reasons that are not valid. Also see Hornsby v. Allen, 5 Cir., 326 F.2d 605, (1964).

Appellees are domestic corporations subject to the same State police powers as any

other domestic corporation. They are equally amenable to the arm of the law as any other domestic corporation. We have not been shown where the stock ownership requirement of 7(d) is reasonable in any respect or wherein the State of Texas or the general welfare of its citizens would be prejudiced should this requirement be excised from the act. Hence, we have a discrimination that is unlawful.

It takes little imagination to picture the jeopardy in which corporations presently having the ownership required would be placed through the routine vagaries of the stock market or by possible heirs of stockholders who might be foreign citizens.

Numerous decisions can be found by both out state and Federal courts proscribing legislation such as the stock ownership requirement before us.

A stock ownership requirement such as that in Section 7(d) was passed upon in Edwards v. Leaver, D.C., 102 F.Supp., 698, 1952. Here a Rhode Island statute was involved which limited the right to obtain a commercial fishing license to individuals who were residents of the State or domestic corporations that had 51% or more of their stock owned by residents of Rhode Island. The court stated:

> "This disparity of treatment between residents and non-residents requires an adequate explanation if the statute is to be sustained as a proper exercise of the state's police power."

The Court held the statute unconstitutional saying:

> "It has not been shown that any local evils, caused by non-residents, would be eliminated by this statute."

The court also held that corporations were "persons" within the meaning of the equal protection and due process clauses of the Constitution of the United States, and that corporate plaintiffs which did not meet the 51% standards were entitled to relief against the discrimination effected by the statute. In respect to corporations being entitled to equal protection clause guaranteed by the Fourteenth Amendment see Louis K. Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929 (1933).

In three other "fishing cases", residency or nonresidency within a State was also held to be an unconstitutional criterion for the granting or withholding of licenses. Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156 (1948); Steed v. Dodgen, 85 F.Supp. 956 (W.D.Tex.1949); Dobard v. State, 149 Tex. 332, 233 S.W.2d 435. Although these cases involved the rights of nonresident individuals, rather than corporations, their rulings and rationale appear equally applicable to corporations since corporations are also embraced by the equal protection and due process clauses.

Additionally, in Ex Parte Baker, 127 Tex. Cr.R. 589, 78 S.W.2d 610, and Linen Service Corporation v. Abilene, Tex.Civ.App., 169 S.W.2d 497, writ refused, courts of this State have stricken down municipal ordinances which gave a preference to a resident engaged in a particular business and discriminated against a nonresident engaged in the same business. In Ex Parte Rodgers, 371 S.W.2d 570 (Tex.Crim.App.) the Court held unconstitutional a city ordinance which, while it did not in so many words discriminate against nonresidents, nevertheless had such effect. In that case the ordinance restricted the unloading of gasoline within a city, but bulk plants were excluded from the restrictions. Standard had a bulk plant within the city, but its competitor, Mobil Oil Company, did not. The Court held unconstitutional such a preference of "resident" Standard over "nonresident" Mobil.

It is not necessary to unduly prolong this opinion with additional cases that could be cited in this respect. The requirement in question is patently discriminatory, of no lawful purpose, consequently unconstitutional.

The judgment of the trial court is affirmed.