STANDARD-TRIUMPH MOTOR COMPANY, Inc., Plaintiff,

v.

CITY OF HOUSTON, TEXAS, et al., Defendants.

Civ. A. No. 14571.

United States District Court
S. D. Texas,
Houston Division.

July 31, 1963.

Holman, Saccomanno & Clegg (Burke Holman), Houston, Tex., for plaintiff.

R. H. Burks, City Atty., and G. Gordon Whitman, Senior Asst. City Atty., Houston, Tex., for defendants.

INGRAHAM, District Judge.

This is an action for a declaratory judgment. Plaintiff, Standard-Triumph Motor Co., Inc., is an importer of certain British made automobiles and parts. These are imported into the United States through the Port of Houston for sale in the states of Texas, New Mexico, Oklahoma, Kansas and Arkansas. After being unloaded at the docks, the vehicles are transported to a service warehouse in the City of Houston for storage.

Regardless of the method of transportation to the warehouse, the vehicles are serviced to a limited extent while still on the dock, i. e., the battery cables are attached to the battery, a small amount of gasoline is placed in the tank, and water is placed in the radiator if necessary. The vehicles are then either driven directly to the warehouse or are given onto a transport truck and delivered to the warehouse in that manner. This servicing and delivery is done by a service company under contract to plaintiff, and the warehouse is owned by the service company. Unless there is in-transit damage to be repaired, no further work is done on a vehicle until it is sold.

Defendants, the City of Houston (hereinafter City) and the Houston Independent School District (hereinafter District), levy an annual ad valorem tax on the personal property within the City and District. The valuation of plaintiff's personal property as of January 1, 1961, was computed so as to include all the automobiles in the warehouse which were owned by plaintiff. An assessment was made on this basis, but plaintiff refused to pay it, and tendered in response an evaluation which omitted such vehicles. This latter tender was rejected by the Tax Assessor and Collector of the City and District.

Plaintiff's refusal to pay the original assessed tax was based on the theory that such tax is in violation of the Constitution of the United States, Article I, Section 10.[1] By stipulation, the sole issue for determination by this court is the constitutionality of the assessed tax. This, in turn, presents the further fundamental question of whether such vehicles have retained their status as imports.

Since the landmark case of Brown v. Maryland, 25 U.S. (12 Wheat.) 419, 6 L.Ed. 678 (1827), it has been unquestioned that a state may never levy a tax on "imports". However, Chief Justice Marshall recognized in that case that there must be a point of time when the power of the state to tax commences. 12 Wheat. at 441, 25 U.S. at 441, 6 L.Ed. 678. Since Brown v. Maryland was decided, the courts have primarily been concerned with formulating certain guidelines from Marshall's language. When the imported item is sold,[2] put to

---

1. "No State shall, without the Consent of the Congress, lay any "Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws * * *."

2. Waring v. The Mayor, 75 U.S. (8 Wall.) 110, 19 L.Ed. 342 (1868); License Cases, 46 U.S. (5 How.) 504, 12 L.Ed. 256 (1847).

the use for which it is intended,[3] or removed from its original package or so changed in form that it is commingled with the common mass of property within the state,[4] it is considered to no longer be within the constitutional immunity against state taxation of imports.

■ Using these criteria, and analyzing the facts of the instant case in light of them, this court is of the opinion that the vehicles in question were still "imports" on January 1, 1961. Clearly the imported items had not been sold. It was stipulated that they were the property of the importer and were at the warehouse lot awaiting sale. It is also clear that these vehicles had not yet been put to the use for which they were intended. It is true that automobiles are meant to be driven, and in this limited sense these items were put to the use for which they were generally intended. However, the importation of these vehicles was for the purpose of distributing them to dealers throughout a five state area where they would then be sold and operated. Their "intended use" was not simply to be driven to a warehouse. It should also be noted that this "use" test is applied primarily in cases involving items imported for use in manufacturing as opposed to items imported for sale. See Youngstown Sheet & Tube Co. v. Bowers, 358 U.S. 534, 79 S.Ct. 383, 3 L.Ed.2d 490 (1959); Hooven & Allison Co. v. Evatt, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1945).

The final test in determining whether an item is still an import is whether it remains in its original package or is commingled with the general mass of property within the state. If automobiles are considered "packaged" in the manner in which they are shipped, then the question is whether attaching the battery cables, placing gasoline in the tank, and putting water in the radiator is sufficient to destroy that "original package". These modifications in the condition of the automobiles were really made only to complete their shipment to the warehouse. This is not the type of change which should be considered such as to destroy the constitutional immunity.

■ The court in Brown v. Maryland was in reality treating the imports as still in transit until they were sold for the first time. And Chief Justice Taney in License Cases, 46 U.S. (5 How.) 504, 575, 12 L.Ed. 256 (1847), also spoke in terms of the imports being regarded as merely in transitu so long as they were in the hands of the importer for sale and were "on their way to the distant cities, villages, and country for which they are destined, and where they are expected to be used and consumed, and for the supply of which they are in truth imported." In the instant case the automobiles were literally still in transit and the minor modifications in their condition were made only to facilitate this transportation. The changes made in these items were made of practical necessity and as such were not sufficient to terminate the immunity which imports have from state taxation.

It is the opinion of the court that the application of the personal property ad valorem tax to these automobiles by the City and District was and is invalid. The clerk will notify counsel to draft and submit judgment accordingly.

---

3. Youngstown Sheet & Tube Co. v. Bowers, 358 U.S. 534, 79 S.Ct. 383, 3 L.Ed. 2d 490 (1959); Hooven & Allison Co. v. Evatt, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1945).

4. Gulf Fisheries v. MacInerney, 276 U.S. 124, 48 S.Ct. 227, 72 L.Ed. 495 (1927); F. May & Co. v. New Orleans, 178 U.S. 496, 20 S.Ct. 976, 44 L.Ed. 1165 (1900).