**TEXAS LIQUOR CONTROL BOARD et al.,
Appellants,**

v.

**AMMEX WAREHOUSE COMPANY,
Incorporated, et al., Appellees.**

No. 11248.

Court of Civil Appeals of Texas.

Austin.

Dec. 2, 1964.

Rehearing Denied Dec. 16, 1964.

———◆———

Waggoner Carr, Atty. Gen., Howard M. Fender and Brady S. Coleman, Asst. Attys. Gen., Austin, for appellants.

R. Dean Moorhead, Austin, for appellees.

ARCHER, Chief Justice.

This case involves the constitutionality of a State law, a statute amending the Texas Liquor Control Act to provide a permit for and to regulate the retail sale of alcoholic beverages for export. Appeal is from a judgment of the trial court in an action which consolidated five separate but substantially identical suits filed on behalf of seven firms operating seventeen liquor selling establishments in the six major Texas towns on the Mexican border.

Each petition sought declaratory judgment holding the amendatory statute unconstitutional and permanent injunction prohibiting the Texas Liquor Control Board, its Administrator, agents, and employees from enforcing or attempting to enforce the new law. Separate temporary injunctions were issued but the five cases were formally consolidated for trial on the merits. The judgment of the trial court granted to the plaintiffs all the relief sought, declaring the statute unconstitutional and enjoining the Texas Liquor Control Board, its Administrator, agents, and employees from enforcing the statute or in any way interfering with the conduct of plaintiffs' businesses. The State of Texas, on behalf of the defendants, immediately filed notice of appeal. At the plaintiffs' request the trial court filed extensive findings of fact and conclusions of law.

The appeal is based on ten points assigned as error, and, in effect are that the court erred in holding that, as a matter of law, Federal, Constitutional and Statutory provisions prohibit State regulation of appellees' businesses, that there is no evidence, or the evidence is insufficient to support the trial court's holding that appellees are exporting liquor, and no evidence or the evidence is insufficient to support the trial court's holding that appellees are conducting their businesses in compliance with Federal regulations; that the court erred in failing to uphold the constitutionality of the Statute in question; that there is no evidence, or the evidence is insufficient to support the trial court's holding that it would be impossible for appellees to conduct their businesses in compliance with the Statute in issue, and that there is no evidence or the evidence is insufficient to support the trial court's holding that the amendatory Statute in question would create conflict with Federal Law.

The Statute brought into question by this suit (Acts 1963, 58th Leg., Ch. 108, p. 196) as codified (Article 666–15(7b) Vernon's Ann.P.C.) reads:

"(7b) United States Bonded Liquor Export Permit. A United States Bonded Liquor Export Permit shall authorize the holder thereof to:

"(a) Purchase liquor in bond from holders of Texas Wholesalers' Permits or purchase liquor from distillers, brewers, wineries, wine bottlers, rectifiers, and manufacturers who are holders of Nonresident Seller's Permits and import into the State of Texas at a United States bonded dock such liquor in transit for exportation purposes.

"(b) Transport such liquor from the United States bonded dock at point of entry under United States Bond to a United States bonded warehouse within the State of Texas.

"(c) Warehouse such liquor under United States bond.

"(d) For the purpose of exportation only, solicit orders for, take orders for, and accept payment for any quantity of said liquor in unbroken original containers.

"(e) Cause such liquor to be withdrawn from a United States bonded warehouse for exportation, in compliance with United States Custom regulations, and delivered to a public common carrier for transportation, in compliance with such carrier's established rate schedule, into the country of export by such common carrier or by such common carrier's affiliated common carrier in the country of export, for delivery to the purchaser at a designated address outside the continental limits of the United States or for delivery to a named qualified person at a designated address outside the continental limits of the United States.

"The annual state fee for a United States Bonded Liquor Export Permit shall be Seven Hundred and Fifty Dollars ($750).

"The privileges authorized by this Section are cumulative and not in lieu of requirements of Federal Law in the conduct of such operations. It is specifically provided, however, that permits under this Section shall not be required for the wholesale export of United States bonded liquor by the holder of any other type of permit which, under existing Statutes and the rules and regulations of the Texas Liquor Control Board, authorizes the wholesale exportation of liquor in compliance with Federal Law."

The idea of selling tax and duty free liquor "for export * * * without State and Federal taxes" was developed by Hal G. Ward who founded Ammex Warehouse Company, and secured from the Texas Liquor Control Board a wholesaler's permit provided for in the Act, and filed bonds to operate a Class 2 and 8 bonded ware-

house, and began operations at Laredo, Texas in June, 1961.

Shortly thereafter the Liquor Board cancelled Ammex's wholesale permit; such permits authorize the exportation of liquor but only in wholesale quantities. The appellees generally sell in quantities of one to three bottles.

Certain phases of this litigation were before this Court in Texas Liquor Control Board v. Jones, 378 S.W.2d 898, and before our Supreme Court in Ammex Warehouse Company v. Archer, 381 S.W.2d 478, and the history of the subject matter was recited and discussed and we make reference to the cases, and will endeavor to confine our consideration to the issues in the instant case and not restate issues disposed of in the decision by the Supreme Court.

There is now pending Civil Action No. 1466 in the United States District Court for the Western District of Texas, Austin Division, Ammex Warehouse Company, Inc., et al. v. Texas Liquor Control Board et al.

Appellees take the position in this present suit on appeal that the cases of Hostetter v. Idlewild Bon Voyage Liquor Corporation, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 .(1964) and Department of Alcoholic Beverage Control for State of California v. Ammex Warehouse Co. of San Ysidro, Inc., 378 U.S. 124, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964) are controlling and that the 21st Amendment to the Constitution does not permit the State to regulate liquor passing through its territory, under the supervision of the United States Bureau of Customs acting under Federal Law for sale and delivery at foreign destinations.

Appellees contend further that the Commerce Clause, the Export-Import Clause and the Supremacy Clause of the Constitution of the United States preclude application of House Bill to them and their businesses and make such Bill unconstitutional as applied to their businesses, and

that the bill is unconstitutional and unenforceable because it is "so vague, uncertain, ambiguous and unclear that it does not inform with reasonable certainty those persons who would be subject to its provisions as to what it means."

The Board takes the position that the evidence fails to show exportation in fact.

The appellees maintain warehouses and sales areas in various border towns in Texas, where they take orders and receive payment for liquor and make deliveries in the towns where such businesses are located. No sales are made in Mexico and no liquors are transported across the international boundary and appellees had no control over the liquor after its delivery to purchasers, who transport the liquor. Such activities, appellants contend, do not fulfill the legal meaning of "export" as given in Swan & Finch Company v. United States, 190 U.S. 143, 23 S.Ct. 702, 47 L.Ed. 984, and as the leading case Empresa Siderurgica, S. A. v. County of Merced, 337 U.S. 154, 69 S.Ct. 995, 93 L.Ed. 1276.

Appellants say that the holding of liquor in "bond" does not establish exportation by appellees, and the actions and conduct by the appellees do no more than show an intent to export and that the receipt of liquor for export and the ultimate exportation does not establish the business of exporting liquor and cite Joy Oil Company v. State Tax Commission of Michigan, 337 U.S. 286, 69 S.Ct. 1075, 93 L.Ed. 1366.

Appellants assert that taxation is not involved in this case and that the fundamental question is the State's right to regulate the businesses of appellees and not to tax the liquor while in bond, and that there is no factual or legal basis on which appellees can be designated as exporters.

By points IV and V appellants claim that appellees' testimony shows violation of Customs Statutes, and there is no evidence, or that the evidence is insufficient to support the Court's holding that appellees are

conducting their businesses in compliance with Federal regulations.

There is no dispute as to the facts in the case. Appellees receive their liquor by the case, and except for Border Bonded, the sales are in quantities of one to three bottles per customer. The liquor is removed from the cases in which it was received and packaged in paper sacks for delivery. Border Bonded sells only in case lots.

Appellants' VI point is that the trial court erred in failing to uphold the constitutionality of the Amendatory Statute in question and by points VII, VIII, IX and. X that there is no evidence, or that the evidence is insufficient to support the trial court's holding, that it would be impossible for appellees to conduct their businesses in compliance with the Statute in question and would create a conflict with Federal Law.

Appellants' view of this litigation is that the law is entitled to the presumption of validity and that the burden of proof was on appellants as plaintiffs in the trial court, and cite among other cases Duncan v. Gabler, 147 Tex. 229, 215 S.W.2d 155, and that the Federal government has given to States broader regulatory powers over alcoholic beverages than to other items of commerce and cite James Clark Distilling Company of Cumberland, Md. v. Western Maryland Railway Company, 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326, and United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951.

As we have stated, most of appellees' liquor is packaged in paper sacks and carted to the walkway at this end of the bridge and lined up on the sidewalk awaiting delivery.

Deliveries are made both to vehicles and to pedestrians and in most instances by cartmen on both sides of the street by Ammex and Kings Mart on one side and other appellees on the other side.

The traffic, especially in evening time, is very heavy across the bridge and there is a possibility that some bottles might be smuggled back into Texas, but we have not had our attention directed to any such violations by customers who have purchased liquor for export. It is also possible that some purchasers would take liquor into Mexico and return with it to Texas and avoid Federal tax and pay only the State Tax. This would be accompanied by a legal risk.

The nature of the traffic and not its incidents, determines its character. Texas & N. O. Ry. Co. v. Sabine Tram Co., 227 U.S. 111, 33 S.Ct. 229, 57 L.Ed. 442.

Appellees maintain stocks of whisky and cigarettes on which no Federal taxes or duties and no Texas taxes have been paid, because such merchandise has been brought to the warehouses and stored there in bond, pursuant to applicable regulations of the U. S. Customs Bureau.

The liquor is in the sole custody of the customs officers stationed at the warehouses, who, under an arrangement approved by the Bureau, appellees reimburse the United States for the salaries paid to such officers, who only handle the stored liquor.

The warehouses are located in buildings that are divided into a bonded warehouse area and a store area connected by locked doors, with one key held by customs officers and the other by employees of appellees, the latter work only in the store area. No whisky is kept in the store area. Customers are not permitted in the warehouse area.

Ordinarily sales are in lots of three bottles or less. (The Mexican Government allows one entering Mexico to bring three bottles of liquor per person, per day.)

A purchaser of liquor orders liquor on forms approved by the Bureau and pays appellees for such and is given a receipt. Other forms are given to the customs officers, who withdraw the whisky called for

in the forms and make entries in the warehouse records.

The liquor is delivered to a bonded cartman, who carries the liquor in bond to the customs station at the end of the international bridge.

The purchaser presents his receipt and is handed the whisky he has purchased and delivery is made under the supervision of the customs officer. The whisky is carried into Mexico and a form certifying that the whisky has been exported is signed by the customs officer, which is placed with the other records that are kept by the Bureau.

The above outlined procedure is similar to that set out in the cases in which Ammex is named, hereinabove cited. In the Hostetter case the manner of delivery is somewhat different, in that the liquor is placed on the aircraft and not given to the purchaser until he lands on foreign soil.

■ We believe that the procedure in use by appellees is in substantial compliance with that set out in the cases referred to.

The trial court made extensive findings of fact and conclusions of law which we have read and considered and believe are supported by the record as a whole and justified by law. 4 Tex.Jur.2d 333.

As may be seen, the law in question seeks to confine appellees' purchases from wholesalers holding permits from Texas and to make deliveries by common carrier. We believe that House Bill 782 if complied with in its entirety, would be an economic impossibility, and would go further than to regulate, but would prohibit appellees from carrying on their businesses.

The appellees are not immune from Texas law or from the Texas Liquor Control Act, and if they should disregard their bonded procedure, contrary to Federal Law and regulation, and divert some of their liquor into Texas, they would be subject to prosecution, apart from House Bill 782.

■ We believe that the Statute is in the face of the Commerce Clause and the Supremacy Clause, as set out in the Idlewild and California Ammex cases, supra.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

In an Amicus Curiae brief the statement is made that, "The State of Texas is seeking to supervise and regulate the transportation of liquor through its territory for the purpose of guarding against a diversion of liquor into domestic channels, and the Liquor Control Board has both alleged and proved the diversion of appellees' merchandise to users within the State of Texas. Delivery is made in Texas."

If there was in this record any evidence which shows that any liquors, at least any significant quantity of liquors, sold by appellees for export was consumed in Texas or diverted for use in Texas, or that there was any reasonable likelihood that such might occur, then I would sustain all of the regulations adopted by the State which were reasonably calculated to prevent such diversion. Clearly Texas has authority to so protect itself. Ziffrin v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128.

The same brief states that the entire State Regulated Liquor Industry along the Rio Grande Valley is vitally interested in sustaining the statutes here attacked.

If the Liquor Control Board, its agents, and all of the interested liquor dealers along the border have not during this controversy been able to show that one bottle of liquor certified by the United States export official as having been exported to Mexico was not in fact exported or that it has in some manner been consumed or re-sold in Texas, then it seems to me that

the patently foolproof method used by appellees to export this liquor is in fact foolproof.

I do not believe that the fact of "delivery in Texas" under the described circumstances is any more proof of diversion, or danger of diversion, than in the Ammex-California case where delivery was made in a strip under the joint jurisdiction of the State and Federal Governments.

Under the facts of this case, as presently appearing, I am of the opinion that the requirements of the Act before us are unreasonable as applied to appellees. I concur in the judgment.