CITY OF HOUSTON and Houston Independent School District, Appellants,

v.

STANDARD–TRIUMPH MOTOR COMPANY, Inc., Appellee.

No. 21073.

United States Court of Appeals
Fifth Circuit.

May 25, 1965.

On Petition for Rehearing
July 6, 1965.

Homer T. Bouldin, B. F. Richards, John Wildenthal, Jr., City Atty., Homer T. Bouldin, Senior Asst. City Atty., Houston, Tex., for appellants.

Norman W. Black, Burke Holman, Houston, Tex., Holman, Saccomanno, Clegg & Martin, Houston, Tex., of counsel, for appellee.

Before RIVES and JOHN R. BROWN, Circuit Judges, and NOEL, District Judge.

JOHN R. BROWN, Circuit Judge:

The substantive problem presented by this case is whether imported English automobiles are immune from Texas ad valorem taxation under the Import-Export Clause [1] of the Constitution. But that question is now secondary for the appeal turns on whether the District Court should have entertained the declaratory judgment suit at all. On that score we hold in the negative, vacate the judgment and remand the case.

The facts may be here severely capsulated since these, together with the legal issues involved, are set forth with clarity in the able opinion of the District Judge. Standard-Triumph Motor Co. v. City of Houston and Houston Ind. School Dist., S.D.Tex., 1963, 220 F.Supp. 732. The suit was filed by the Importer,[2] the importer of British Triumph automobiles, many of which are in the popular sports class. The automobiles involved were on T-day [3] still the property, and in the physical custody, of Importer. Ex-

---

1. Art. 1 § 10, Clause 2 of the Constitution:

 "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws * * *."

2. Standard-Triumph Motor Company, Inc.

3. Tax day January 1 of 1961, 1962, 1963.

cept for filling of batteries and putting in a small amount of gasoline to facilitate transfer from dock side to Importer's storage area in the city, each of the automobiles was in substantially the same condition as when shipped from England and discharged from the vessel. An automobile seldom remained more than 90 days in pre-sale storage. When and as Importer sold a car to one of its distributor-dealers, it was withdrawn from storage, any marine transportation damage repaired, the automobile cleaned of protective coatings, and certain equipment such as bumpers, hubcaps, windscreens, and the like installed in place. This procedure took ordinarily not more than three to four hours. It being conceded by stipulation that the automobiles were imported and the Importer was the importer, the controversy raged about whether they were still imports or whether by reason of these activities of Importer, they had ceased to be imports. Quite understandably, the antagonists took as gospel and scripture, good for attack and defense, the celebrated opinion by Chief Justice Marshall in Brown v. The State of Maryland, 1827, 12 Wheat 419, 25 U.S. 419, 6 L.Ed. 678. The taxing authorities, faced with the inescapable fact that the automobiles were imported, not for *use* by the importer, but for resale by it, stressed heavily the concept articulated in Hooven & Allison Co. v. Evatt, 1945, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252, and applied in Youngstown Sheet & Tube Co. v. Bowers, 1958, 358 U.S. 534, 79 S.Ct. 383, 3 L.Ed.2d 490, to sustain state taxation, that the importer "have so acted

upon the imported materials as to cause them to lose their distinctive character as 'imports' by irrevocably committing them, after their importation journeys have definitely ended," [4] to the use for which they had been imported.

On the facts and stipulations, the District Judge concluded that the automobiles were still imports. In response to the express prayer of the complaint, the Court entered a declaratory judgment decreeing that the "assessment of" the specified automobiles for each of the three years 1961–1962–1963 "was and is an invalid assessment on imports" and "was and is an unconstitutional tax on imports" and therefore "was and is illegal and null and void." [5]

By this appeal, the taxing authorities make a dual attack which, apart from the intrinsic merits, brings seriously into question for the first time in this litigation the propriety of the Federal Court entertaining the declaratory judgment suit at all. Because we think this first—albeit completely new—ground is decisive, we do not reach the second question concerning the merits.

For the challenge of the propriety of a Federal declaratory suit, the taxing authorities stand squarely on the Johnson Act which, as it now appears in the Judicial Code as revised in 1948, reads as follows:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State Law where a plain, speedy and efficient remedy may be had in the courts of such State." [6]

---

4. 358 U.S. 543, 79 S.Ct. 388.

5. The final decree dismissed with prejudice the taxing authorities counterclaim for taxes as assessed.

6. 28 U.S.C.A. § 1341. As originally enacted, Act of August 21, 1937, c. 726, 50 Stat. 738, amending § 24 of the Judicial Code, 28 U.S.C.A. § 41(1), it provided that "No district court shall have jurisdiction of any suit to enjoin, suspend,

or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State."

The Reviser offered these explanations of the 1948 changes:

"This section restates the last sentence of said section 41(1). * * * Words 'at law or in equity' before 'in

To this the Importer makes a triple response. First, the contention comes too late and was effectually waived below. Second, the Johnson Act, whether in prohibitory or jurisdictional terminology, proscribes injunctive, restraining orders only, not declaratory judgments. And third, Texas court remedies are not "plain, speedy and efficient."

██ As to the first, we think in fact that the taxing authorities acquiesced without objection to the Federal declaratory judgment proceeding. There might, just barely possibly might, be a paper denial.[7] But certainly the taxing authorities registered no real opposition. The detailed pretrial order, F.R.Civ.P. 16, made no mention of it as even a remote possible issue and it is not surprising, therefore, that the Judge's opinion is completely silent on the point. The upshot of it is that were the Johnson Act not a restraint upon the Court itself but a mere matter left to the parties, we would readily conclude that there had been a waiver.

 A consideration of the second argument—inapplicability of the Johnson Act to declaratory suits—demonstrates two things. First, the policies proscribing injunctive suits forbid declaratory actions as well. And second, this congressional adjustment of comity considerations is not a matter left to private parties to waive or assert as their interests might dictate.

The Supreme Court in Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407, made the answer crystal clear. What was done parallels in importance what was said. Our Court had affirmed, on the merits, a declaratory judgment of the Federal District Court for the Eastern District of Louisiana declaring that a Louisiana unemployment tax was constitutionally applicable to crew members of dredges notwithstanding the uniformity of admiralty concept. Although, on the same day, the Supreme Court sustained the validity of that type of unemployment tax statute,[8] the Supreme Court affirmed our judgment "but solely on the ground that, in the appropriate exercise of the court's discretion, relief by way of a declaratory judgment should have been denied without consideration of the merits." 319 U.S. at 301, 63 S.Ct. at 1074. The Court, therefore, just as we are doing here, extinguished altogether the adjudication of the merits even though the judicial travail had been incurred and the offspring was robust and legitimate, that is right.

In taking this strong stand, the Court first emphasized the pre-Johnson Act judicial equitable principles to maintain

the courts of such State' were omitted as unnecessary.

"Words 'civil action' were substituted for 'suit' in view of rule 2 of the Federal Rules of Civil Procedure.

"Words 'under State law' were substituted for 'imposed by or pursuant to laws of any State' for the same reason." 28 U.S.C.A. § 1341, quoting from, H.Rep. No. 308, 80th Cong.

7. Art. III of the complaint, headed up "Statement of Case," had subparagraphs (1) through (10). Subpar. (10) categorically alleged that the Importer did not have "an adequate and speedy remedy in the Courts of Texas" for the reason that (a) in the threatened tax suits against the Importer, penalties and interest would continue to accrue, (b) under Art. 7329 [note 12, infra], defenses which may be pleaded do not comprehend

the Importer's constitutional claim and (c) there is no local law question. To this in Art. II of the answer, the taxing authorities made this ambiguous response:

"Defendants are without information or knowledge sufficient to form the basis of a belief as to the truth of the allegations contained in subparagraphs (4), (5), (6), (8), (9) and (10), insofar as such subparagraphs allege matters peculiarly within the knowledge of plaintiff or insofar as such subparagraphs allege legal conclusions; the remainder of the complaint is denied."

8. Standard Dredging Corp. v. Murphy, 1943, 319 U.S. 306, 63 S.Ct. 1067, 87 L. Ed. 1416. The Court refers to this in Great Lakes, see 319 U.S. 293, at 296, 63 S.Ct. 1070.

comity. "This Court," it stated, "has recognized that the federal courts, in the exercise of the sound discretion which has traditionally guided courts of equity in granting or withholding the extraordinary relief which they may afford, will not ordinarily restrain state officers from collecting state taxes where state law affords an adequate remedy to the taxpayer. Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447." 319 U.S. at 297, 63 S.Ct. at 1072.

The Court went on to state that "Congress recognized and gave sanction to this practice of federal equity courts by the" Johnson Act (note 6, supra). This earlier equity practice and, the Court continued, "the confirmation of that practice by Congress, have an important bearing upon the appropriate use of the declaratory judgment procedure by the federal courts as a means of adjudicating the validity of state taxes." 319 U.S. at 299, 63 S.Ct. at 1073.

The Court looked at the problem in practical terms. It recognized that the Johnson Act speaks only in terms of injunction and "that the declaratory judgment procedure may be, and in this case was, used only to procure a determination of the rights * * * without an injunction * * *." At the same time it was aware that the "procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended." But the Court found it unnecessary to determine whether the Act itself should be construed "to prohibit a declaration by federal courts concerning the invalidity of a state tax." It was unnecessary, the Court stated, because "we are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." 319 U.S. at 299, 63 S.Ct. at

1073. After examining the purpose of the Declaratory Judgment Act, 28 U.S. C.A. § 2201, and the discretion to withhold declaratory relief upon equitable principles, the Court then rephrased it this way. "The considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the [Johnson Act] are persuasive that relief by way of declaratory judgment may likewise be withheld in the sound discretion of the court." 319 U.S. at 300, 63 S.Ct. at 1074. But this general language about discretion is then translated into tangible specific terms: "With due regard for these considerations, it is the court's *duty* to withhold such relief when, as in the present case, it appears that" the taxpayer has "an adequate remedy" through a state court proceeding in which "he may assert his federal rights and secure a review of them by this Court." 319 U.S. at 300–301, 63 S.Ct. at 1074. (emphasis added)

██ Wide as a Court's power must be in the exercise of its discretion whether to grant declaratory relief,[9] the Supreme Court makes clear that "it is the court's duty to withhold such relief" when, in the words of the Johnson Act, there is "a plain, speedy and efficient remedy * * * in the courts of" the state. 319 U.S. at 300–301, 63 S.Ct. at 1074. This is the decision that the Sixth Circuit has twice reached. Helmsley v. City of Detroit, Mich., 6 Cir., 1963, 320 F.2d 476; Wyandotte Chemicals Corp. v. City of Wyandotte, 6 Cir., 1963, 321 F.2d 927. The critical turning point is the adequacy of the state court remedies. See Township of Hillsborough, Somerset County, New Jersey v. Cromwell, 1946, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358; Georgia Railroad & Banking Co. v. Redwine, 1952, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335; George F. Alger & Co. of Detroit, Mich. v. Peck, S.D.Ohio, 1954, 119 F.Supp. 812,

---

9. Byers v. Byers, 5 Cir., 1958, 254 F.2d 205; American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 5 Cir., 1960, 280 F.2d 453; Seniors v. Arnold, 9 Cir., 1960, 284 F.2d

106. See also Public Service Comm'n of Utah v. Wycoff Co., 1952, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291; Wright, Federal Courts § 100 (1963).

affirmed, 1954, 347 U.S. 984, 74 S.Ct. 853, 98 L.Ed. 1120, 1148; Livingston v. United States, E.D.S.C., 179 F.Supp. 9, affirmed, 1960, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719. Certainly, after emphasizing the pre-Johnson Act equitable limitations congressionally approved and strengthened by that enactment, it is inconceivable that the Supreme Court intended to allow any discretion to grant declaratory relief where adequate state remedies were available.

The propriety of the District Court's consideration of this case turns, therefore, on whether state remedies in Texas are adequate. The answer is simple. Texas has a vast arsenal to assure orderly adjudication of the serious federal constitutional question here presented.

At the outset, Texas has and enthusiastically employs a Declaratory Judgment Act of its own. Tex.Rev.Stat.Ann. art. 2524–1; United Services Life Ins. Co. v. Delaney, 5 Cir., en banc, 1964, 328 F.2d 483, at 489 (concurring). Almost in words which forecast this very suit, Texas recognizes that this procedure may be used to determine whether specified property is "exempt from ad valorem taxes assessed by the City of Houston and Houston Independent School District." River Oaks Garden Club v. City of Houston, 1963, Tex., 370 S.W.2d 851, 852. Likewise, a Texas taxpayer has the right to injunctive relief from illegal tax assessments.[10] Dallas County v. Dallas National Bank, 142 Tex. 439, 179 S.W.2d

288; City of Houston v. Baker, Tex.Civ. App., 1915, 178 S.W. 820, writ refused; City of Orange v. Levingston Shipbuilding Co., 5 Cir., 1958, 258 F.2d 240, 241. For all practical purposes, therefore, the Importer could have brought the very same suit which it asserted in the Federal Court in the District Courts of Harris County. The relief could have expressly requested a declaration, an injunction, or both.

In addition while there is no precise statutory machinery for a payment and a suit to recover back ad valorem taxes, the Courts of Texas recognize the existence of such a remedy. The Texas Courts hold that where a legislative act by its terms provides for penalty and interest on taxes (as is the case for ad valorem taxes), the taxpayer may pay the taxes and recover them back if the tax is illegal and in many instances there is not even a requirement of a payment under formal protest. See, e. g., Crow v. City of Corpus Christi, 1948, 146 Tex. 558, 209 S.W.2d 922, 924; National Biscuit Co. v. State, 1940, 134 Tex. 293, 135 S.W.2d 687, 692, 693. And finally, a Texas taxpayer can stand fast. Property is not subject to distraint by taxing authorities. To coerce payment, a court judgment is required. Despite the literal limitations in Art. 7329,[11] in the suit brought by the taxing authority, the taxpayer may urge the defense that the property is constitutionally exempt from taxation. Whelan v. State, 1955, 155 Tex. 14, 282 S.W.2d 378;[12] 54 Tex.Jur.2d

10. To test legality of an occupation, gross receipt, franchise, license or other privilege tax or fee, Tex.Rev.Civ.Stat.Ann. art. 7057b, prescribes a statutory scheme for payment under protest and suit for recovery back thus eliminating the necessity for, and probably the availability of, an equitable injunctive remedy. Cobb et al. v. Harrington, 1945, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837.

11. "There shall be no defense for a suit for collection of delinquent taxes, as provided for in this chapter except:
 "1. That the defendant was not the owner of the land at the time the suit was filed.

"2. That the taxes sued for have been paid, or
 "3. That the taxes sued for are in excess of the limit allowed by law, but this defense shall apply only to such excess."

12. The Supreme Court of Texas stated: "Article 7329 limits the defenses which may be interposed to suits for delinquent taxes. Subdivision 3 of that article reads as follows: 'That the taxes sued for are in excess of the limit allowed by the law, but this defense shall apply only to such excess.' The language of the subdivision 3 cannot be construed to mean that a taxpayer may defend against a suit for taxes only when his property

Taxation § 174. And, of course, when the taxpayer's contention is that specifically identified property is *exempt* from taxation, not the more difficult claim that the property of others has been ignored or undervalued, it is easy for the taxpayer to meet the Texas burden "to show in dollars that he is worse off." City of Orange, Texas v. Levingston Shipbuilding Co., 5 Cir., 1958, 258 F.2d 240, 246, 248, approved, State v. Federal Land Bank of Houston, 1959, 160 Tex. 282, 329 S.W.2d 847, 850. But whatever shortcomings might be urged [13] as to the procedure of defending a suit for taxes, or payment and suit to recover back, this Court, ever since Norton v. Cass County, 5 Cir., 1940, 115 F.2d 884, rejecting our earlier decision in City of Fort Worth v. Southwestern Bell Telephone Co., 5 Cir., 1936, 80 F.2d 972, 974, because of the intervening Johnson Act has recognized that the remedy by injunction in the Courts of Texas is plain, speedy, efficient, and complete.[14]

The record is plain. The remedies available in the State Courts of Texas are plain, speedy, efficient, and altogether complete. Nothing the Federal Court can grant by way of declaratory judgment or otherwise affords to this Importer a single right which it may not assert with confidence in the Courts of Texas.[15] What are we to do? The easy route, of course, on the very narrow substantive constitutional question here posed in the light of the uniquely limited body of law [16] is to examine into the merits as did the District Judge and then either affirm or reverse as that study requires. For such a procedure, a beguiling argument is urged—the question being, after all, one solely of federal constitutionality, no court is better equipped than a Federal Court for that important decision. But important and sweeping as is the Import-

13. We find nothing helpful to the Importer's position in these cases so heavily stressed by it. Republic Ins. Co. v. Highland Park Independent School Dist., Tex.Civ.App., 1938, 123 S.W.2d 784, writ denied, W.O.J., judgment correct; Sharp v. Womack, 1939, 132 Tex. 507, 125 S.W.2d 270; Willis et al. v. State, 1940, Tex.Civ.App., 142 S.W.2d 385, writ dism'd, judgment correct; State v. Hoffman, 1918, 109 Tex. 133, 201 S.W. 653. To escape ultimate liability for interest or other statutory penalties, a tender of taxes, when that route is followed, must be for an amount not less than that found ultimately to be legally due.

is assessed at more than its fair market value or when the rate levied is in excess of that allowed by law. To so hold would require that the statute be held unconstitutional for it would operate to deny to the taxpayer his constitutional right to be taxed on an equal and uniform basis with others. The legislature has no power to sanction discrimination between taxpayers by taking away defenses. * * *; Howth v. French Independent School Dist., Tex. Civ.App., 115 S.W.2d 1036, 1038, affirmed, 134 Tex. 211, 134 S.W.2d 1036." Without any extraordinary prescience, we forecasted in 1940 that the Texas Courts would so hold, Norton v. Cass County, 5 Cir., 1940, 115 F.2d 884, 886.

14. In City of Fort Worth v. Southwestern Bell Telephone Company, we expressed what we later described as perhaps "partly dictum when uttered" the view that "the practice in Texas apparently is to be liberal with injunctions before payment but opposed to recoveries afterward." The significant change wrought by the Johnson Act was to make the test of adequacy depend, not on whether the legal remedy in the Federal Court was adequate, but whether under any State Court remedy, legal or equitable, legality could adequately be tested.

15. Within the very recent past in determining cases in which Federal Three-Judge District Courts have entered abstention orders, Texas Courts have held Texas statutes invalid under the Federal Constitution. See Texas Liquor Control Board v. Ammex Warehouse Co., Tex.Civ.App., writ of error pending, 1964, 384 S.W.2d 768; Miskell v. Termplan, Inc. of Houston, Tex.Civ.App., 1964, 381 S.W.2d 129.

16. Justice Frankfurter points out in his dissent in Youngstown Sheet & Tube Co. v. Bowers, 1959, 358 U.S. 534, 551, 79 S.Ct. 383, 3 L.Ed.2d 490, that this question has been before the Supreme Court less than a dozen times in the 132 years from Brown v. State of Maryland, 1824, 12 Wheat. 419, 25 U.S. 419, 6 L.Ed. 678, down to that date.

Export Clause, we regard it as no more vital than, say, the Fifth Amendment and its requirement of due process, or the Fourteenth Amendment with its like requirement and that of equal protection. These were the usual frequent grounds asserted in invoking federal jurisdiction in the pre-Johnson Act days. Despite the judge-made equitable principles which restricted federal equitable relief and thus ameliorated the likelihood of state-federal clashes, Congress was of the view that these actions were both too disturbing to federal-state relations and worked an obvious discrimination as between small, local taxpayers and larger ones who could satisfy the dollar limitations on the amount in controversy for suits grounded on the laws or Constitution of the United States [17] as well as diversity,[18] likewise often a favorable advantage of corporate taxpayers. Livingston v. United States, S.D.S.C. (3-Judge), 1959, 179 F.Supp. 9, 11, affirmed 1960, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719; [19] Norton v. Cass County, 5 Cir., 1940, 115 F.2d 884.

 To this sort of discrimination generally, we would be discriminating particularly were we to ignore the plain requirement of the statute and the duty, articulated in the Great Lakes case "to withhold such relief" by declaratory judgment when the State remedy is adequate. That would give this Importer as a litigant an advantage not available to any other taxpayer in Harris County or Houston. More seriously, that would leave congressional policy to the desires of private litigants. The congressional policy is a restraint, not upon the parties, but upon the Court. Although, as must so often be the case in today's complex litigation, a Court must be dependent to a large extent upon the specific contentions, pro and con, of the parties and the indispensable help of earnest, vigorous advocates, see W. R. B. Corp. v. Geer, 5 Cir., 1963, 313 F.2d 750, 753, it was the Court after all which had the obligation of effectuating this congressional will. We are confident that had this vital issue been brought to his attention, the District Judge would have declined to entertain the suit. Since what he would have done is what we hold he had to do, the declaratory judgment has to be vacated and the cause remanded for dismissal.[20]

Judgment vacated and remanded.

RIVES, Circuit Judge (dissenting):

With deference, I respectfully dissent.

The majority holds, in effect, that the Great Lakes case (319 U.S. 293, 63 S.Ct. 1070) teaches that the Johnson Act, 28 U.S.C. § 1341, establishes a *jurisdictional* rule preventing a federal court from entertaining a declaratory judgment action with respect to the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in courts of such state.[1]

---

17. 28 U.S.C.A. § 1331(a).

18. 28 U.S.C.A. § 1332(a).

19. We said as much in Norton. "Congress has clearly expressed its intention to deprive the federal courts of jurisdiction of suits of this character where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of the state." 115 F.2d at 886.

20. Once the District Court entertained the suit, as it did, the taxing authorities were, or at least reasonably felt themselves, obliged to file a compulsory counterclaim for the taxes as assessed. F.R. Civ.P. 13. Since the complaint should have been dismissed, there was no claim pending to which counterclaim was compelled. Under these peculiar circumstances it, likewise, falls. Cf. Lawhorn v. Atlantic Refining Co., 5 Cir., 1962, 299 F.2d 353.

1. Thus, in various parts of its opinion the majority states:
 " * * * were the Johnson Act not a restraint upon the Court itself but a mere matter left to the parties, we would readily conclude that there had been a waiver." (page 197).
 " * * * it is inconceivable that the Supreme Court intended to allow any discretion to grant declaratory relief where adequate state remedies were available." (page 199). "The congressional policy is a restraint, not upon the parties, but upon the Court." (page 201).

I do not agree. The Great Lakes decision itself bases the affirmance "solely on the ground that, *in the appropriate exercise of the court's discretion*, relief by way of a declaratory judgment should have been denied without consideration of the merits." (319 U.S. at 301, 302, 63 S.Ct. at 1074.) (Emphasis supplied.) True, as the majority notes, the Court also said: " * * * it is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back." (319 U.S. at 300, 301, 63 S.Ct. at 1074.) That statement, like all others, must be considered against the background of facts and circumstances surrounding the case then being decided by the court. It was not meant to indicate that in any and all cases the existence of a plain, speedy and efficient state remedy is the only matter to be considered in the appropriate exercise of the court's discretion. In the Great Lakes case, the defendant made a motion to dismiss the action for the alleged reason that the complaint fails to state a claim upon which relief can be granted. That motion was followed by the defendants' answer, with full reservation of all rights under its motion to dismiss. See the opinion of the district court in Great Lakes Dredge and Dock Co. v. Charlet, E.D.La.1942, 43 F.Supp. 981, 983. In the present case there was no motion to dismiss. The defendants not only formally admitted that the court had jurisdiction, but they demanded that the court exercise that jurisdiction, and stipulated in writing that the sole issue for determination was a ruling on the merits. They went even further and stipulated that the decision should apply not only to the tax year 1961 on which the complaint was based but to subsequent tax years. To that end the defendants stipulated the value of the claimed imports sought to be taxed for the years 1962 and 1963.

The complaint in the present case based jurisdiction both on the existence of a federal question, 28 U.S.C. § 1331, and on diversity of citizenship, 28 U.S.C. § 1332. It alleged that "this action presents for determination a case of actual controversy within the jurisdiction of this court under 28 U.S.C.A. Section 2201." It alleged that the plaintiff was a citizen of New York and the defendants were citizens of the State of Texas. All of these allegations were expressly and formally admitted in the defendants' answer, which concluded as follows: "Wherefore, Defendants demand that the Court adjudicate the automobiles of Plaintiff to be taxable property within the State of Texas and within the jurisdiction of Defendants."

Thus, while in the Great Lakes case, supra, the adequacy of the state remedy was the only circumstance to be considered in the appropriate exercise of the court's discretion, there are in the present case other controlling circumstances to which I will revert. Before doing so, however, let me discuss further whether the Johnson Act does establish a jurisdictional bar to the entertainment of a declaratory judgment action with respect to the assessment, levy or collection of any tax under state law. That it does not is, I submit, manifest from the plain language of the one-sentence statute. "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. No amount of legalistic language can convert that plain statute into a denial of federal jurisdiction to entertain a declaratory judgment action with respect to a tax under state law. The Supreme Court itself has repeatedly recognized that the Great Lakes case went no further than to establish a rule of discretion.[2]

2. Spector Motor Co. v. McLaughlin, 1944, 323 U.S. 101, 105–106, 65 S.Ct. 152, 89 L. Ed. 101; Hillsborough Tp. Somerset County, N. J. v. Cromwell, 1946, 326 U.S. 620, 623, 66 S.Ct. 445, 90 L.Ed. 358; Spector Motor Service v. O'Con-

Professor Moore, after quoting at length from the Great Lakes case, stated with his usual clarity the effect of that decision:

"Thus the Court did not give a definitive answer as to whether or not the 1937 [Johnson] Act includes declaratory judgments. In view of the fact that the Declaratory Judgment Act had been on the books for three years prior to the 1937 Act, Congress was undoubtedly aware of the remedies afforded by that procedure. That the 1937 Act made no mention of declaratory judgments is evidence that the declaratory remedy was not included within the Act's prohibition. Thus federal courts still have technical jurisdiction to render declaratory judgments as to the invalidity of state taxes. But it is well settled that courts, pursuant to judicial discretion, may refuse to exercise jurisdiction in declaratory actions.[9] The considerations which prompted courts of equity to refuse to enjoin the collection of state taxes are equally applicable to actions for *declaration* of invalidity of such taxes.[10] The exercise of discretion, rather than lack of jurisdiction over the subject matter, is here at issue.

"9. ¶ 57.08, supra.

"10. Great Lakes & Dock Co. v. Huffman, n. 7, supra [(1943) 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407]."

6 Moore, Federal Practice ¶57.18 (2d ed. 1952), pp. 3096–97.

The question involved in the present case is not one of jurisdiction but one of the appropriate exercise of the court's discretion. Clearly and admittedly the court had jurisdiction both under the federal question statute, 28 U.S.C. § 1331, and under the diversity of citizenship statute, 28 U.S.C. § 1332. The declaratory judgment statute itself makes clear that the court has jurisdiction with respect to state taxes. That statute begins:

nor, 1951, 340 U.S. 602, 604, 71 S.Ct. 508, 95 L.Ed. 573; England v. Louisiana State Bd. of Medical Examiners, 1964,

"In a case of actual controversy within its jurisdiction, *except with respect to federal taxes*, any court of the United States" etc. (Emphasis supplied.) There could hardly be a plainer case calling for the application of the rule *ex pressio unius est exclusio alterius*. While the statute expressly excludes controversies over federal taxes, controversies over state taxes are not similarly excluded. See 3 Barron & Holtzoff, Federal Practice & Procedure, Rules ed. (Wright) § 1264, p. 290, with the pertinent authorities collected in footnote 45. That the Johnson Act does not establish a judicial bar to a district court's entertainment of a declaratory judgment action with respect to a tax under state law is made clear by simply reversing the positions of the parties. If the present defendants, the City of Houston and the Houston Independent School District, had as plaintiffs filed this complaint naming the present plaintiff as defendant, there could be no argument but that the court had jurisdiction under sections 1331, 1332 and 2201 of Title 28, United States Code. In substance and effect, that is what the defendants did do when they stipulated on pretrial "that the sole issue for determination" is a decision on the merits, that that decision should extend beyond the tax year 1961 involved in the complaint, and should be binding for subsequent tax years; and when in their answer they made formal demand that the court adjudicate the merits. Clearly, I submit, the district court had jurisdiction and the only question is whether in the appropriate exercise of its discretion, the court should have declined to consider the merits.

As has been stated, there was no motion to dismiss in this case. Admittedly there are cases in which the district court should refuse sua sponte to exercise its jurisdiction. Matthews v. Rodgers, 1932, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447, arose before the original Johnson Act was passed in 1934 (48 Stat. 775). In

375 U.S. 411, 423–424, 84 S.Ct. 461, 11 L.Ed.2d 440.

that case the plaintiff sought to enjoin the collection of a state tax as an unconstitutional burden on interstate commerce. The Supreme Court noted that the objection to the equity jurisdiction of the district court had been properly raised by motion to dismiss, but also stated:

"The want of equity jurisdiction, if obvious, may and should be objected to by the court of its own motion. Twist v. Prairie Oil Co., 274 U.S. 684, 690 [47 S.Ct. 755, 71 L.Ed. 1297]. In other cases, this jurisdictional requirement, unlike the others mentioned, may be treated as waived if the objection is not presented by the defendant *in limine*. Duignan v. United States, 274 U.S. 195, 199 [47 S.Ct. 566, 71 L.Ed. 996]; Singer Sewing Machine Co. v. Benedict, 229 U.S. 481, 484 [33 S.Ct. 942, 57 L.Ed. 1288]; Thompson v. Central Ohio R. Co., 6 Wall. 134 [18 L.Ed. 765]; compare Matson Navigation Co. v. United States, ante [284 U.S.] p. 352 [52 S.Ct. 162, 76 L.Ed. 336]; Hilton v. Dickinson, 108 U.S. 165, 168 [2 S. Ct. 424, 27 L.Ed. 688]; Grace v. American Central Insurance Co., 109 U.S. 278, 283–284 [3 S.Ct. 207, 27 L. Ed. 932]; Bors v. Preston, 111 U.S. 252, 255 [4 S.Ct. 407, 28 L.Ed. 419]." (284 U.S. 524–25, 52 S.Ct. 219)

The two Sixth Circuit cases relied on in the majority opinion do not support a holding that under the circumstances of the present case the district judge should have sua sponte dismissed the complaint. In Wyandotte Chemicals Corp. v. City of Wyandotte, 6 Cir. 1963, 321 F.2d 927, 929, the defendants moved to dismiss the complaint and the district judge denied the motion on the ground that the state remedies were not adequate. The question presented was the adequacy of the state remedies. In Helmsley v. City of Detroit, Michigan, 6 Cir. 1963, 320 F.2d 476, the district judge was not misled into exercising jurisdiction but acted sua sponte and dismissed the complaint and his judgment was affirmed. That is different from the present case where not only was the discretion of the district court not invoked but the defendants actively invited and even demanded that the district court decide the merits.

If, however, there should be any doubt as to the jurisdiction of the district court to entertain the declaratory judgment action, I submit that there can be no doubt whatsoever as to its jurisdiction to entertain the defendants' counterclaim seeking to recover the taxes for the year 1961. The majority disposes of that question in the last footnote of the opinion, stating: "Once the District Court entertained the suit, as it did, the taxing authorities were, or at least reasonably felt themselves, obliged to file a compulsory counterclaim for the taxes as assessed. F.R.Civ.P. 13." What the majority overlooks is that at the time the counterclaim was filed the district court had not decided to entertain the suit. The counterclaim was filed along with the answer as the defendants' only pleading in the case. Certainly the defendants could reasonably have felt themselves under no compulsion to file that counterclaim. Not only could they have had no doubt but that the district court would have allowed the counterclaim to be filed by way of amendment under Rule 15, Fed.R.Civ.P., but they had an actual right under Rule 12 to withhold the filing of the counterclaim until the district court had ruled on the appropriate motion to dismiss. See Lawhorn v. Atlantic Refining Co., 5 Cir. 1962, 299 F.2d 353, 356–57; 2 Moore, Federal Practice ¶12.07, p. 2244.

At a time when they were under no compulsion to do so, the defendants counterclaimed seeking to recover the taxes for the year 1961. The district court had jurisdiction of that counterclaim just as it would have had jurisdiction over an original action filed by the defendants, the City and the School District, both under the grant of jurisdiction of federal questions, 28 U.S.C. § 1331, and under the diversity statute, 28 U.S.C. § 1332. In a suit by the State Tax Collector of Mississippi for the collection of past due taxes invoking diversity jurisdiction, this Court held that the State of

Mississippi was the real party-plaintiff and that, a state not being a citizen, there was no jurisdiction under the diversity statute. Craig v. Southern Natural Gas Co., 5 Cir. 1942, 125 F.2d 66. There is, of course, no dispute in this case and it is formally admitted that the defendants, the City and the School District, are in the position of citizens within the diversity statute. Ordinarily, actions brought by or against a political subdivision of a state are maintainable in a federal court on the ground of diversity of citizenship. See cases collected in Annotation 147 ALR, p. 790, et seq. In addition, this case arises under the Constitution of the United States within section 1331 of Title 28, United States Code. Under that statute there would be jurisdiction of a case filed by the state itself, and there can be no possible doubt that the City and School District could validly invoke federal jurisdiction for the collection of the taxes.

The situation faced by the court in this case is almost analogous to that with which we were confronted in City of Orange, Texas v. Levingston Shipbuilding Co., 5 Cir. 1958, 258 F.2d 240. There we held that the Court was without jurisdiction of a complaint which prayed for an injunction prohibiting the City from enforcing its tax assessment; that that was in the very teeth of the plain command of the statute, 28 U.S.C. § 1341. However, the City had filed an original suit for the recovery of its taxes which had been removed to the federal court, and this Court held that, "with the injunction out of the way, the suit was simply one for delinquent taxes for 1954 and 1955," 258 F.2d at 241, and proceeded to decide the merits.

In summary, I would hold that the Great Lakes case does not teach that the Johnson Act establishes a jurisdictional rule against a federal court entertaining a declaratory judgment action with respect to taxes under state law; that the question to be decided is whether the district court committed an error of discretion in entertaining the declaratory judgment action; that no such error was committed; that the district court had no discretion but was under a duty to entertain the defendants' counterclaim and to decide the merits under that counterclaim.

The majority does not reach a decision of the merits, and I will therefore forego any discussion other than to say that I agree with the opinion and decision of the district court. Standard-Triumph Motor Co. v. City of Houston, S.D.Tex. 1963, 220 F.Supp. 732. I think that the judgment should be affirmed and, therefore, respectfully dissent.

On Petition for Rehearing

PER CURIAM:

Considering that the restraint of the Johnson Act is on the Court and not the parties, so that the so-called counter claim was merely incidental to a claim for declaratory relief which ought not to have been entertained and the relief thus sought by the City would have flowed automatically from the proper framing of the judgment, F.R.Civ.P. 54(c), the cases [1] now urged by the Importer to sustain the take nothing judgment entered in its favor on the City's counterclaim do not compel an affirmance.

Denied.

RIVES, Circuit Judge, dissents.

1. Haberman v. Equitable Life Assur. Soc., 5 Cir., 1955, 224 F.2d 401; Great Lakes Rubber Corp. v. Herbert Cooper Co., 3 Cir., 1961, 286 F.2d 631.